UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Jose Luis Gutierrez, | Case No. 19-cv-2857 (ECT/ECW) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Charlie Hoffman, Ciara Macklanburg, and Paul Christensen, *in their individual and official capacities*, | |
| Defendants. | |

This matter is before the Court on Defendant Charlie Hoffman's ("Hoffman"), Ciara Macklanburg's ("Macklanburg"), and Paul Christensen's ("Christensen") (collectively, "Defendants") Motion to Dismiss Plaintiff's Complaint (Dkt. 12). The case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court recommends granting Defendants' Motion to Dismiss.

## I.     BACKGROUND

**A.     The Minnesota Sex Offender Program's Vocational Work Program**

The Minnesota Sex Offender Program's ("MSOP") vocational work program, authorized under Minnesota Statute § 246B.05, states that "[t]he commissioner of human services shall develop a vocational work program for persons admitted to the Minnesota sex offender program." Minn. Stat. § 246B.06, subd. 1(a). In addition, the commissioner may develop "vocational activities for sex offender treatment for civilly committed sex

offenders as the commissioner deems necessary and suitable to the meaningful work skills training, educational training, and development of proper work habits and extended treatment services for civilly committed sex offenders . . . ." *Id.* Vocational activities authorized under Minn. Stat. § 246B.06, subd. 1(a) are:

> designated Minnesota State Industries and must be for the primary purpose of sustaining and ensuring Minnesota State Industries' self-sufficiency, providing educational training, meaningful employment, and the teaching of proper work habits to the individuals in the Minnesota sex offender program under this chapter, and not solely as competitive business ventures.

*Id.* "Civilly committed sex offenders participating in the vocational work program are not employees of the Minnesota sex offender program, the Department of Human Services, or the state, and are not subject to fair labor standards under sections 177.21 to 177.35 . . . ." *Id.*, subd. 7.

**B.     Procedural History**

Plaintiff Jose L. Gutierrez ("Gutierrez") is civilly committed to the care and custody of the MSOP, administered by the Department of Human Services ("DHS"), for an indeterminate term. (Dkt. 1 ¶ 1 ("Complaint").)

Gutierrez, who is *pro se*, filed a "Complaint for Violation of Civil Rights under 42 U.S.C. § 1983" on November 11, 2019. (*Id.*) The Complaint named the following Defendants: Charlie Hoffman, Ciara Macklanburg, and Paul Christensen, in their official and individual capacities.[1] (Dkt. 1 ¶ 7.)

---

[1]     Hoffman is a Vocational Work Program Director and Macklanburg and Christensen are Vocational Programming Supervisors employed by MSOP's Moose Lake Facility. (Dkt. 1 ¶ 7.)

2

Gutierrez applied for *in forma pauperis* ("IFP") status on November 7, 2019. (Dkt. 2.) On November 13, 2019, the Court granted Gutierrez's application for IFP status. (Dkt. 5.)

On December 23, 2019, Defendants filed a Motion to Dismiss. (Dkt. 12.) Gutierrez filed a memorandum in opposition to Defendants' Motion to Dismiss on November 4, 2019 (Dkt. 21) and Defendants filed a reply memorandum on February 12, 2020 (Dkt. 24).

**C.     Complaint**

Gutierrez filed his Complaint pursuant to 42 U.S.C. § 1983. (Dkt. 1.) The Complaint relates exclusively to Gutierrez's removal from "Vocational Programming for a First Vocational Treatment Notice ("VTN") within 90-day period."[2] (*Id.* ¶ 9.) Gutierrez alleges that Defendants deprived him of his "Federal Constitutional rights" and that his "Fourteenth Amendment right is unconstitutionally restrictive, and was imposed as punishment without due process." (*Id.* ¶ 2.) Gutierrez alleges that "Defendants, acting under Color of Law, deprived Plaintiff of his rights, privileges and immunities secured by the Fourteenth Amendment (due process) to the United States Constitution." (*Id.*) In the Complaint, Gutierrez recounts his removal from the vocational work program for 60 days. (*Id.* ¶¶ 11-17.)

Gutierrez alleges that on or before July 3, 2019, he "documented on my time card that I participated in my Vocational tasks from 9:15 a.m. to 10:15 a.m. cleaning the

---

[2]     According to the Complaint, "MSOP Policy No. 220-5070(G)(3)(a) states: A client who receives three Vocational Treatment Notices for non-therapeutic incidents within a 90-day period may be removed from vocational programming." (Dkt. 1 ¶ 9.)

3

showers. After the cameras were reviewed, I was only observed participating in my unit cleaning tasks from 9:33 a.m. to 10:06 a.m." (*Id.* ¶ 15.) According to the Complaint, Gutierrez falsified his time card, which resulted in Gutierrez receiving a Major Behavioral Expectation Report ("BER") for Lying and Misrepresentation. (*Id.* ¶ 15.)

Gutierrez alleges that on July 3, 2019, after a consultation with Gutierrez's treatment team and the 7/11/19 Vocational Placement Committee ("VPC") meeting, Gutierrez received a VTN and was consequently removed from the program for a minimum of 60 days. (*Id.*) After 60 days from the date of the VTN, Gutierrez could apply to Vocational Programming as they become available. (*Id.*) Gutierrez alleges that because he only received one VTN within a 90-day period for a non-therapeutic incident, he should not have been removed from the Vocational Programming. (*Id.*)

Gutierrez alleges that he submitted several Client Request Forms ("CRF") to Defendants challenging his removal from the vocational work program. (*Id.* ¶¶ 4-10.) On July 8, 2019, Gutierrez sent a CRF to Macklanburg stating that he "should have gotten a VTN warning for my incident was non-therapeutic. And [sic] I did not have any other write ups or warnings." (*Id.* ¶ 11.) Macklanburg responded on July 17, 2019, stating that "[f]alsification on your time card is taken seriously and typically results in a removal from vocational programming" and notifying Gutierrez to "utilize the grievance process if you do not agree with the determination." (*Id.*)

On July 18, 2019, Gutierrez submitted a CRF to Christensen, arguing that Macklanburg's response did not address why he was removed from vocational programming. (*Id.* ¶ 12.) Gutierrez specified that he only had one VTN notice in 90 days

4

for an incident that was non-therapeutic yet "as per policy it takes 3 VTN's in 90 days." (*Id.*)  On July 25, 2019, Christensen responded, stating that "Falsification of a time card is a serious matter.  Most employers have written policies that list it as a cause for immediate termination of employment, our program is no exception" and that "[t]he determination is upheld."  (*Id.*)

On July 26, 2019, September 2, 2019, and September 10, 2019, Gutierrez submitted CRFs to Hoffman appealing the decision to remove Gutierrez from the vocational work program.  (*Id.* ¶¶ 13-17.)  Gutierrez alleges that on July 26, 2019, he stated in the CRF that "[b]oth Ms. Macklanburg and Mr. Christenson are obviously, and blatantly refusing to recognize, and adhere to the Vocational Programming MSOP, Police Number 220-5070 under Procedures (g), Vocational Programming documentation, and Evaluation 3(a) Under Vocational Treatment Notice (220-5070 E-3011)."  (*Id.* ¶ 14.)  According to Gutierrez, Macklanburg and Christensen "openly did not address the fact that my action, no matter how egregious it may be to their professional standards, it did not 'Per Policy' sited [sic] above, merit for me to be immediately terminated after just one Non-Therapeutic Vocational Treatment Programming Notice within 90-days."  (*Id.*)  In addition, Gutierrez stated that "Christensen, is boldly and negligently not upholding the [MSOP] policy."  (*Id.*)  Gutierrez believes the decision to remove him from the program "was, and is not within the sited [sic] policy . . . ."  (*Id.*)

Gutierrez alleges that on September 2, 2019, he submitted a second CRF to Hoffman, indicating that he had not yet received a response from Hoffman.  (*Id.* ¶ 16.)

5

Hoffman replied that he already responded to Gutierrez's request upholding the dismissal. (*Id.*)

Gutierrez alleges that on September 10, 2019, he submitted a third CRF to Hoffman challenging whether Hoffman ever responded. (*Id.*) Gutierrez indicated that he attached to the CRF "all my chain of command responses that showed vivid, and specific proof" that Macklanburg and Christensen were "refusing to recognize and adhere to policy #220-5070 under procedures (g), Voc. Prog. Doc. And Evaluation 3(A) under Vocational Treatment Notice (220-5070 E-3011)." (*Id.*) Gutierrez alleges that Hoffman asked Gutierrez to send him a request with enough room to respond. (*Id.*) Consequently, Gutierrez resubmitted a CRF on September 17, 2019. (*Id.*) On September 20, 2019, Hoffman stated that he supported Gutierrez's removal and encouraged Gutierrez to work with his treatment team to reapply for the program when eligible. (*Id.*)

Gutierrez seeks various forms of relief including declaratory and injunctive relief against Defendants in their official capacities and monetary and compensatory damages against Defendants in their individual capacities. (*Id.* ¶ 2.) Construing the Complaint liberally, as the Court is required to do for pro se plaintiffs, *Solomon v. Petray*, 795 F.3d 777, 786 (8th Cir. 2015), it appears Plaintiff brings this action under 42 U.S.C. § 1983, and claims that his removal from the vocational work program violated his due process rights under the Fourteenth Amendment.

## II.   LEGAL STANDARD

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the pleadings are construed in the light most favorable to the non-moving party, and the

6

facts alleged in the complaint must be taken as true. *See Ashley County, Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). In addition, a court must afford the plaintiff all reasonable inferences from those allegations. *See Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010). At the same time, to withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Federal Rule of Civil Procedure 8 and meet the principles articulated by the United States Supreme Court in *Iqbal* and *Twombly*.

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleading standard articulated by Rule 8 "does not require detailed factual allegations, but it [does demand] more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[T]he plausibility standard, which requires a federal court complaint to state a claim for relief that is plausible on its face, . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Ritchie v. St. Louis Jewish Light*,

630 F.3d 713, 717 (8th Cir. 2011) (internal quotation and citation omitted). "Determining whether a complaint states a plausible claim for relief will, . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).

> Following *Twombly* and consistent with *Iqbal*, the Eighth Circuit explained:
>
> While a plaintiff need not set forth "detailed factual allegations," *Twombly*, 127 S. Ct. at 1964, or "specific facts" that describe the evidence to be presented, *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (per curiam), the complaint must include sufficient factual allegations to provide the grounds on which the claim rests. *Twombly*, 127 S. Ct. at 1965 n. 3. A district court, therefore, is not required "to divine the litigant's intent and create claims that are not clearly raised," *Bediako*, 354 F.3d at 840, and it need not "conjure up unpled allegations" to save a complaint. *Rios v. City of Del Rio*, 444 F.3d 417, 421 (5th Cir. 2006) (internal quotation omitted).

*Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009). The Eighth Circuit has interpreted the "face" of the complaint as including public records and materials embraced by the complaint as well as materials attached to the complaint. *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 764 (8th Cir. 2012); *see also Stahl v. United States Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003) (citing *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 802-03 (8th Cir. 2002)); *Levy v. Ohl*, 477 F.3d 988, 992 (8th Cir. 2007) (state court records).

### III.   DEFENDANTS' MOTION TO DISMISS

Defendants move the Court to dismiss Plaintiff's Complaint with prejudice for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. 12.)

### A. Section 1983 Claims Against Defendants in their Official Capacities

Defendants first argue that to the extent the Complaint can be interpreted as seeking relief against them in their official capacities, the Complaint fails to state a claim. (Dkt. 14 at 10-11.) Specifically, Defendants argue that Gutierrez "does not allege that any policy or custom of MSOP, DHS, or the State of Minnesota led to a constitutional injury and therefore his claims against Defendants in their official capacities should be dismissed." (*Id.* at 11.) In response, Gutierrez argues that "the record is undeveloped at this stage of the proceedings," and that he has "plead [sic] that a policy or custom of MSOP, DHS, or the State of Minnesota has led to a constitutional injury." (Dkt. 21 at 7.) In their reply, Defendants reiterate that Gutierrez fails to allege facts that would allow this Court to infer that the alleged failure to follow Vocational Programming Policy was a policy or custom of MSOP, DHS, the State of Minnesota, or otherwise. (Dkt. 24 at 2-3.) Defendants further argue that Gutierrez only alleges that Defendants failed to follow policy, which is not a violation of the Constitution absent underlying substantive entitlement to a property interest, and that Gutierrez has conceded that he does not have a liberty or property interest in the vocational work program. (*Id.* at 3-4.)

"Official-capacity liability under 42 U.S.C. § 1983 occurs only when a constitutional injury is caused by 'a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" *Gladden v. Richbourg*, 759 F.3d 960, 968 (8th Cir. 2014) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). "A suit against a government official in his or her official capacity is 'another way of pleading an action against an entity of

9

which an officer is an agent.'" *Baker v. Chisom*, 501 F.3d 920, 925 (8th Cir. 2007) (quoting *Monell v. Dep't of Social Services*, 436 U.S. 658, 690 n. 55 (1978)). Based on the record, Hoffman, Macklanburg, and Christensen are all employees at MSOP's Moose Lake Facility, an arm of the State of Minnesota.

Here, Gutierrez's official capacity claims should be dismissed. "Claims against individuals in their official capacities are equivalent to claims against the entity for which they work." *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998) (citation omitted). Gutierrez alleges that Defendants failed to comply with the Vocational Programming Policy's provision authorizing MSOP employees to remove clients from the vocational work program when they receive three Vocational Treatment Notices within 90 days. (Dkt. 1 ¶¶ 11, 12, 14, 15, 16.) However, Gutierrez has not alleged that his removal from the vocational work program was pursuant to a government policy or custom or established that Defendants in their official capacities deprived him of his constitutional rights by acting pursuant to an official policy. Nor does he allege that any policy or custom of the MSOP, DHS, or the State of Minnesota led to a constitutional injury. He also has not alleged any facts plausibly suggesting that the alleged failure to follow the Vocational Programming Policy was the result of any such policy or custom. Accordingly, the Court recommends that Defendants' motion to dismiss be granted with respect to claims against Defendants in their official capacities.

**B.      Section 1983 Claims Against Defendants in their Individual Capacities**

The Defendants also contend that Gutierrez fails to bring a viable § 1983 claim against Defendants in their individual capacities. "To state a claim under 42 U.S.C. §

10

1983, a plaintiff must show that he was deprived of a right secured by the Constitution and the laws of the United States and that the deprivation was committed by a person acting under color of state law." *Alexander v. Hedback*, 718 F.3d 762, 765 (8th Cir. 2013). Here, the only claim asserted by Gutierrez is a due process claim under the Fourteenth Amendment, which the Court addresses below.

Under the Fourteenth Amendment, no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The first step in determining if there has been a due process violation is determining if there is a protected life, liberty, or property interest. *See Movers Warehouse, Inc. v. City of Little Canada*, 71 F.3d 716, 718 (8th Cir. 1995). "[W]here no such interest exists, there can be no due process violation." *Dobrovolny v. Moore*, 126 F.3d 1111, 1113 (8th Cir. 1997). This is true whether the due process claim is a procedural or substantive one. *See Singleton v. Cecil*, 176 F.3d 419, 424 (8th Cir. 1999) (citing *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 445-46 (8th Cir. 1995)).

### 1. Substantive Due Process

Defendants argue that Gutierrez fails to allege a substantive due process right to participation in the vocational work program. (Dkt. 14 at 12-14.) Gutierrez concedes that "nowhere in the Complaint did Plaintiff ever allege a cause of action on this ground" and that the Complaint "cannot be read to allege such a violation." (Dkt. 21 at 9.) Gutierrez states in his opposition: "Plaintiff's Complaint Never Allege[s] A Substantive Due Process Claim" and argues that the Motion to Dismiss should be denied because he has not asserted any such violation. (*Id.*) In their reply, Defendants argue that Gutierrez

11

waved any arguments in connection with the substantive due process clause. (Dkt. 24 at 3.)

The substantive due process component of the Fourteenth Amendment protects individuals against certain government actions, regardless of the procedures used to implement them. *See Schmidt*, 655 F.3d at 816. To show a violation of substantive due process, the "plaintiff must demonstrate both that the official's conduct was conscience-shocking, and that the official violated one or more fundamental rights that are deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Hall v. Ramsey Cty.*, 801 F.3d 912, 917 (8th Cir. 2015) (citations and quotation marks omitted). "To satisfy the conscience-shocking standard, a government official's conduct must be 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Id.* at 917-18 (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847-48 n. 8 (1998)). Conduct that is "'intended to injure [an individual] in some way unjustifiable by any governmental interest is . . . most likely to rise to the conscience-shocking level.'" *Id.* at 918 (alteration and omission in original) (quoting *Lewis*, 523 U.S. at 849). "But when the acts of a government official" constitute "'something more than negligence but less than intentional conduct' the 'totality of the facts in a given case' must be assessed to determine whether behavior is conscience shocking." *Id.* (footnote omitted) (quoting *Lewis*, 523 U.S. at 849, 850).

Gutierrez has explicitly stated that he is not asserting a substantive due process clause. (*See generally* Dkt. 21 at 9.) Moreover, the Court notes that the removal from

12

the vocational work program for falsifying a time card is not the type of conduct that "shocks the conscience" for the purposes of adequately alleging a substantive due process claim. *See generally*, *Perseke v. Moser*, No. 16-CV-557 (PJS/LIB), 2016 WL 6275191, at *6 (D. Minn. Sept. 26, 2016), *R.&R. adopted*, 2016 WL 6246761 (D. Minn. Oct. 25, 2016) (internal citation omitted) ("As stated above, Plaintiff has no protected property interest in his vocational placement, nor does he have a fundamental right to employment while in the MSOP; thus, his argument that he has a protected property interest in the wages he would have earned through his vocational placement had he not been terminated fails. Even if there were a fundamental right implicated by the termination of Plaintiff's job, the termination as a consequence of a fight and disorderly conduct is not conduct that shocks the conscience.").

In view of Gutierrez's disavowal of any substantive due process claim, the Court recommends denial of the Motion to Dismiss as moot to the extent it seeks dismissal of a substantive due process claim.

### 2. Procedural Due Process Claim

Gutierrez alleges that his procedural due process rights under the Fourteenth Amendment were violated because Defendants removed him from the vocational work program for a minimum of 60 days even though he received one, not three, VTNs within a 90-day period. (Dkt. 1 ¶¶ 2, 9.) Defendants argue that Gutierrez alleges no facts demonstrating he has a protected property or liberty interest in participation in the vocational work program or that the process he received was inadequate. (Dkt. 14 at 15-16.) Gutierrez argues that he "never alleged in the Complaint that he has a constitutional

13

right to participate in the vocational work program" and that he has a "right to due process" but received no notice and no opportunity to be heard on Defendants decision to remove him from the vocational work program. (Dkt. 21 at 11-12.) Gutierrez further argues: "Plaintiff never alleged in the Complaint that he had a protected property or liberty interest in participating in the vocational work program." (*Id.* at 12.) In their reply, Defendants point out Gutierrez's concession that he does not have a protected property right to participation in the vocational work program and contend that Defendants provided Gutierrez with notice of removal from the vocational work program. (Dkt. 24 at 4-5.)

Procedural due process requires "the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *see also Boner v. Eminence R-1 School Dist.*, 55 F.3d 1339, 1342 (8th Cir. 1995) ("Due process secures only an opportunity to be heard, not guaranteed or probable success."). Where a plaintiff has not identified what liberty or property interest they were deprived of, "any procedural due process claim necessarily fails." *Beaulieu v. Ludeman*, 690 F.3d 1017, 1047 (8th Cir. 2012). Procedural due process constrains government decisions "which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews*, 424 U.S. at 332. Accordingly, in order to state a procedural due process claim, a plaintiff must show (1) the existence of a constitutionally protected liberty or property interest, and (2) that the defendants deprived him of that interest without constitutionally adequate process. *Schmidt v. Des Moines Pub. Schs.*, 655 F.3d 811, 817 (8th Cir. 2011); *see also Kroupa v.*

*Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013) (explaining that a procedural due process claim "turns on (1) whether the state actor's decision impacted a protected liberty or property interest, and if so, (2) what process was constitutionally 'due'"). Absent a protected liberty or property interest, an individual is not constitutionally entitled to any process. *See Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006) (explaining that courts do not consider what process is due unless the plaintiff has a protected liberty or property interest).

Here, as Gutierrez concedes, he has not alleged in the Complaint that he has a constitutionally protected liberty or property interest in participating in the MSOP's vocational work program. To the contrary, Gutierrez concedes that the Complaint does not allege that he has a constitutional right to participate in the vocational work program. (Dkt. 21 at 11 ("Plaintiff never alleged in the Complaint that he has a constitutional right to participate in the vocational work program.").) Even if Gutierrez did allege such a right exists, the Eighth Circuit has held that MSOP patients have no protected interest in employment while civilly committed in the MSOP. *See Favors v. Hoover*, No. 13-cv-428 (JRT/LIB), 2014 WL 4954687, *15 (D. Minn. Sept. 30, 2014) (finding that while Minnesota Administrative Rule 9515.3040 "sets out certain requirements for sex offender treatment programs generally, it "does not create a statutory interest in a work program for individual participants in the [MSOP] treatment program."); *see also Perseke v. Moser*, No. 16-cv-557 (PJS/LIB), 2016 WL 6275191, at *4 (D. Minn. Sept. 26, 2016), *R.&.R. adopted*, No. 16-cv-557 (PJS/LIB), 2016 WL 6246761 (D. Minn. Oct. 25,

2016) (recognizing that MSOP patients have no protected interest in employment while civilly committed to the MSOP).

Rather than alleging a protected liberty or property interest, Gutierrez contends that he has a standalone right to procedural due process notwithstanding the absence of a liberty or property interest. (*See* Dkt. 21 at 11 ("Plaintiff never alleged in the Complaint that he has a constitutional right to participate in the vocational work program. However, he alleged he has a constitutional right to due process."); *id.* at 12 ("Plaintiff does however have a protected right to due process.").) The U.S. Supreme Court has rejected the notion that a procedural due process right exists independent of a protected liberty or property interest. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983) ("Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement . . . . The State may choose to require procedures for reasons other than protection against deprivation of substantive rights, . . . but in making that choice the State does not create an independent substantive right."). Because Gutierrez has not alleged, much less plausibly alleged, a deprivation of a protected liberty or property interest in his removal from the vocational work program, his procedural due process claim fails. *See Schmidt*, 655 F.3d at 817 (procedural due process claim first requires showing of the existence of a constitutionally protected liberty or property interest); *see also Olim*, 461 U.S. at 250 ("The State may choose to require procedures for reasons other than protection against deprivation of substantive rights, . . . but in making that choice the State does not create an independent substantive

right.").[3]  Accordingly, the Court recommends dismissal of Gutierrez's procedural due process claim and dismissal of his Complaint.  Defendants seek dismissal with prejudice. (Dkt. 12.)  However, dismissals for failure to state a claim under Rule 12(b)(6) are typically without prejudice.  *See County of Mille Lacs v. Benjamin*, 361 F.3d 460, 464 (8th Cir. 2004) ("A district court is generally barred from dismissing a case with prejudice if it concludes subject matter jurisdiction is absent."); *Michaelis v. Nebraska State Bar Ass'n*, 717 F.2d 437, 438-39 (8th Cir. 1983) ("Ordinarily dismissal of a [pleading] for failure to comply with Rule 8 should be with leave to amend.").  The Court consequently recommends that the dismissal be without prejudice.

## C.     Qualified Immunity

Finally, Defendants argue that they are entitled to qualified immunity because Gutierrez fails to allege facts demonstrating that a right to participation in the vocational work program was clearly established when Gutierrez was removed from the vocational work program.  (Dkt. 14 at 17-18.)  In response, Gutierrez concedes that qualified immunity would bar claims for damages against Defendants in their official capacities (Dkt. 21 at 13), but argues that Defendants violated a clearly established right to due process in the form of notice and hearing, separate from any underlying property or liberty rights (*id.* at 13-16).  In their reply, Defendants argue that "the clearly established

---

[3]     "We need reach the question of what process is due only if the inmates establish a constitutionally protected liberty interest . . . ."  *Beaulieu*, 690 F.3d at 1047 (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)).  Because the Court finds Plaintiff has not established a constitutionally protected liberty or property interest in participation in the MSOP's vocational work program, the Court does not address what process is due.

17

law is that procedural due process first requires deprivation of a substantive liberty or property interest," which Gutierrez has failed to demonstrate.  (Dkt. 24 at 5.)

"Qualified immunity shields government officials from liability unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would know."  *Ferguson v. Short*, 840 F.3d 508, 510 (8th Cir. 2016) (citing *Mallak v. City of Baxter*, 823 F.3d 441, 445 (8th Cir. 2016)).  "This court examines (1) whether the facts alleged or shown, construed most favorably to the plaintiffs, establish a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged misconduct, such that a reasonable official would have known that the acts were unlawful."  *Small v. McCrystal*, 708 F.3d 997, 1003 (8th Cir. 2013) (citing *McCaster v. Clausen*, 684 F.3d 740, 745 (8th Cir. 2012)).  "[Qualified] immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)).  Having recommended dismissal of Gutierrez's procedural due process claims, the Court concludes that the Defendants are entitled to qualified immunity and recommends dismissal on that basis as well.

## IV.   RECOMMENDATION

Based on the above, and on the files, records, and proceedings herein, **IT IS RECOMMENDED THAT**:

1. Defendants' Motion to Dismiss (Dkt. 12) be **GRANTED**; and

2. Plaintiff Jose Gutierrez's claims be **DISMISSED WITHOUT PREJUDICE**.


DATED: July 20, 2020    *s/Elizabeth Cowan Wright*
ELIZABETH COWAN WRIGHT
United States Magistrate Judge


## NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c).